UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CHERI E. RIDGE, a.k.a Cheri
Ryan,

                Plaintiff,

      v.

CAROLYN COLVIN,
Acting Commissioner of Social Security

                Defendant.

No. 1:13-cv-02063-AC

FINDINGS AND
RECOMMENDATION

Judge ACOSTA, Magistrate Judge:

*Introduction*

      Claimant Cheri Elizabeth Ridge, also known as Cheri Elizabeth Ryan, ("Claimant") seeks

judicial review of a final decision by the Commissioner of Social Security ("Commissioner")

denying Claimant Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381-1383(f). This court has jurisdiction

to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following careful review

FINDINGS & RECOMMENDATION      1                [MLF]

of the record, the court concludes the Commissioner's decision should be should reversed and remanded for additional administrative proceedings.

### Procedural Background

Claimant filed current applications for SSI and DIB on June 1, 2010, alleging disability beginning October 25, 2009. (Tr. 210-217.) Her claims were denied initially and upon reconsideration. Claimant requested a hearing and appeared before Administrative Law Judge Richard A. Urbin ("the ALJ") on May 10, 2012. (Tr. at 35-73.) At the hearing, Claimant amended her onset date to September 11, 2010. (Tr. at 38.) On September 11, 2012, the ALJ issued a decision denying Claimant's application for benefits. (Tr. at 15-34.) The Appeals Council denied Claimant's request for review, making the ALJ's opinion the Commissioner's final decision. Claimant subsequently filed for review of the decision in this court. (Dkt. No. 1.)

### Factual Background

Claimant was born in 1984 and was twenty-six years old at the onset of her alleged disability. (Tr. at 304.) She graduated from high school and completed one term of a college writing class on the internet. (Tr. at 39.) From 2001 to 2009, Claimant worked part time as an in-home caretaker, housekeeper, and janitor. During this time her earnings were limited, and she made more than $5,000 per year only once. She was laid off in 2009 and attempted to go back to work in May 2010, but she quit for a variety of reasons. (Tr. at 238.) Since that date, Claimant has not worked or actively sought employment. (Tr. at 41.)

Claimant lives with her two young children in Prospect, Oregon, and at the time of the hearing, Claimant was pregnant with her third child. (Tr. at 45, 74.) Since the onset of her alleged disability, Claimant has dedicated her time to maintaining the household and caring for her children.

(Tr. at 255-62.) Claimant is the household's primary source of income from the money she receives from pre-SSI payments. (Tr. at 55.) Claimant has a driver's license but has not driven since February 2011. (Tr. at 58.) When Claimant drove, she would only drive to the bus stop to drop off and pick up her children from school. (Tr. at 257.)

I. Medical Evidence

Claimant has a long history of physical problems caused by Klippel-Feil Syndrome, a genetic abnormality resulting in degenerative disk disease. (Tr. at 320.) In October 2009, Claimant complained of headaches and having her right leg lock up. (Tr. at 293.) Doctors at Shady Cove Medical Center took a magnetic resonance imaging ("MRI") scan that was negative for any abnormal enhancements, but her ventricles showed borderline Chiari I malformation. (Id.) Chiari malformations are structural defects in the cerebellum, the part of the brain that controls balance.[1]

In May 2010, Claimant returned to the clinic after tripping on a log. (Tr. at 22.) While she did have limping gait, she did not have spinal tenderness, her back was normal, she had no focal motor deficits, she had intact cranial nerves and no cerebellar deficits, and she was fully oriented. (Tr. at 302.). Claimant returned to the clinic in September 2010 and was examined by Dr. Helen Trew ("Dr. Trew"). (Tr. at 321.) Dr. Trew observed Claimant to be emotionally stable but noted Claimant could not squat, hop, tandem, and toe or heel walk due to pain. (Id.) Additionally, she had an abnormal Romberg test, a reduced neck and back range of motion, and significant tenderness in the paravertebral muscles from the neck down through the thoracolumbar region. (Id.) Despite these problems, Dr. Trew observed Claimant had normal gross and fine motor skills, no

---

[1]*Chiari Malformation Fact Sheet*, NAT'L INST. OF NEUROLOGICAL DISORDERS & STROKE, http://www.ninds.nih.gov/disorders/chiari/detail_chiari.htm (Last updated December 10, 2014).

paravertebral muscle spasms, 3/5 and 4/5 motor strength in her lower and upper extremities, a grossly normal sensory examination, normal deep tendon reflexes, and grossly intact cranial nerves. (*Id.*)  However, Claimant had difficulty shrugging her shoulders due to lack of strength. (*Id.*) Factoring Claimant's objective and subjective observations, Dr. Trew concluded Claimant was unable to work a full eight-hour day. (Tr. at 323-24.)  Claimant could be expected to stand and walk less than two hours and sit for-four-to-six hours during an eight-hour work day.  (Tr. at 324.)  Dr. Trew also found "[t]he amount of weight the claimant to lift or carry is [limited to] less than 10 pounds frequently and occasionally . . . ."  (*Id.*)

Dr. Neal Berner ("Dr. Berner") and Dr. Richard Alley ("Dr. Alley"), the State agency non-examining medical consultants, reviewed Claimant's medical files and completed a residual functional capacity ("RFC") assessment in October and November 2010.  (Tr. at 83, 107.)  Both Doctors determined Claimant had the RFC to perform full-time sedentary work.  (Tr. at 78, 101.) They found Claimant "showed relative independence and activity, including self-care, driving car/shopping as well as household chores."  (*Id.*)  Further, both doctors concluded Dr. Trew's findings regarding Claimant's ability to stand, walk, lift, and carry were not supported by the other clinical and radiological findings. (*Id.*)  Therefore, they found no "additional evidence to warrant a change in the initial RFC of Sedentary, with postural limits." (*Id.*)

In February 2011, nurse-practitioner Laura Johnson referred Claimant to a neurologist, Dr. John A. Melson ("Dr. Melson"), who the ALJ identified as Claimant's "treating physician." (Tr. at 341.)  Dr. Melson found Claimant's gait was normal, she could heel/toe walk without difficulty, and her strength in her upper and lower extremities was normal.  (*Id.*)  Yet, Claimant's tandem walking was poor, she experienced tremors, and her Romberg was unsteady with swaying from the ankles.

(*Id.*)    From these findings, Dr. Melson found Claimant had an Arnold-Chiari malformation, "probably type I," and recommended Claimant undergo another MRI to rule out obstructive hydrocephalus. (*Id.*)

Claimant obtained a CT scan which non-examining radiologist Dr. James Mcanally ("Dr. Mcanally") reviewed on October 13, 2011. (Tr. at 379.) Dr. Mcanally found no significant intracranial abnormalities and only a very mild inferior ectopia of the right cerebellar tonsil which could represent minimal Chiari I malformation. (*Id.*) Dr. Mcanally believed the "chronic developmental anomalies in the osseous structures at the craniocervical junction and C1" to be of "doubtful significance . . . ." (*Id.*) Dr. Melson never reviewed the CT scan.

### Summary of the ALJ's Finding

The ALJ engaged in the five-step "sequential evaluation" process for evaluating SSI claims. 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four, but the burden of production shifts to the Commissioner at step five to identify jobs existing in significant numbers in the national economy that the claimant can perform despite his or her residual functional capacity, age, education, and work experience. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4).

### I. Step One

At step one, the ALJ is required to determine whether or not the claimant is engaging in, or has engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. § 1572(a)-(b). If the individual is not engaging in SGA, the analysis continues to step two. Here, the ALJ determined Claimant met the "insured status requirements under the Social Security Act through December 31, 2013," and had not engaged in SGA since her alleged onset date. (Tr. at 38.)

## II. Step Two

At step two, the ALJ must determine whether Claimant's alleged impairment or combination of impairments is sufficiently severe to limit Claimant's ability to work. 20 C.F.R. § 404.1520(c). This inquiry is a *de minimis* screening meant to dispose of groundless claims. *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001). If Claimant does not have one or more severe impairments, the claim is denied. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). However, if the court determines the Claimant has one or more severe impairments, the analysis continues on to step three. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

The ALJ determined Claimant had "the following medically determinable impairments: (1) Klippel-Feil Syndrome with congenital fusion and kyphosis of the cervical spine; and (2) Arnold-Chiari malformation (Type 1) (cerebella tonsil ectopia) with headaches. (Tr. at 20.) The ALJ discussed Claimant's medical records and noted that the Claimant failed to prove her allegations she suffered from other medically determinable impairments such as Bonnevie-Ullrich syndrome, visual impairment, shoulder impairment, and mental impairment. (*Id.*) From Claimant's medical records, the ALJ concluded that the medically determinable impairments Claimant did prove, while not severe individually, were severe when considered in combination. (Tr at 21.)

## III. Step Three

At step three, the ALJ is required to consider whether Claimant's impairments or combination of impairments is sufficiently severe to meet the medical criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R.§ 404.1520(d). If the claimant's impairments match those included in the Listings, the claimant is automatically entitled to Benefits, regardless of the claimant's individual ability to work. *Celaya v. Halter*, 332 F.3d 1177,

1180 (9th Cir. 2003) ("Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix").

The ALJ determined Claimant did not have an impairment or combination of impairments that met or medically equaled the Listings. (Tr. at 22.) No treating or examining physician mentioned or provided findings that are the same or equivalent to the listed impairments. (*Id.*) Specifically, the ALJ found that there is no evidence that Claimant's Klippel-Feil Syndrome resulted in compromise of a nerve root or the spinal cord. (*Id.*) In addition, the Claimant does not have spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication. (*Id.*) Therefore, the ALJ concluded the Claimant did not meet the Listings.

## IV. Residual Functional Capacity

Next, the ALJ articulated the limits of Claimant's Residual Functional Capacity ("RFC"). An RFC is an individual's "ability to do physical and mental work activities on a sustained basis despite limitations from [his or] her impairments." (Tr. at 19.) The ALJ held that the Claimant has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), but Claimant could: (1) only occasionally climb ladders, ropes, and scaffolds; (2) only frequently stoop, kneel, and climb ramps and stairs; and (3) only occasionally crouch or crawl. (Tr. at 22.)

## V. Step Four

At step four, the ALJ is required to determine whether Claimant has the RFC required to return to past-relevant work. 20 C.F.R. § 404.1520(f). Past-relevant work means work performed within the last fifteen years or fifteen years prior to the date of disability. 20 C.F.R. §§ 404.1565(a), 416.965(a). If Claimant has the RFC required to engage in past relevant work, Claimant is not

FINDINGS & RECOMMENDATION        7                                    [MLF]

disabled and the analysis ends. 20 C.F.R. § 404.1520(d)-(e). However, if Claimant does not have the RFC required to engage in his or her past relevant work, the analysis continues.

The ALJ concluded Claimant was unable to perform any of her past relevant work. (Tr. at 27.) Claimant was unable to work as an in-home caregiver, which is a semi-skilled work that is generally performed at the medium exertional level. (*Id.*) Relying on the vocational expert's testimony, the demands of the Claimant's past relevant work exceeded her RFC. (*Id.*) Therefore, the ALJ held that Claimant is unable to perform any past relevant work. (*Id.*)

VI. Step Five

At step five, the ALJ must determine whether Claimant is capable of engaging in other work given Claimant's RFC. 20 C.F.R. § 404.1520(g). If Claimant is able to do other work, she is not disabled; if Claimant is not, she is entitled to an award of benefits. At step five, the burden of proof shifts to the Commissioner to demonstrate that Claimant can engage in some kind of SGA that exists in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142 ("[T]he fifth and final step of the process determines whether he is able to perform work in the national economy in view of his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work") (citing 20 C.F.R. §§ 404.1520(f), 416.920(f))).

The ALJ concluded that given Claimant's limitations Claimant can perform jobs that exist in significant numbers in the national economy. (Tr. at 28.) The ALJ relied upon the testimony of the vocational expert Elizabeth Brown-Ramos ("the VE") to reach her conclusion. The ALJ's first hypothetical to the VE was based on the opinion of the non-examining physicians Dr. Berner and Dr. Alley and contained the following exertional limitations: "could lift 10 pounds occasionally and frequently; stand and/or walk two hours; sit about six hours; could no more than occasionally climb

ladders and scaffolds; could frequently climb ramps and stairs; frequently stoop and kneel; and no more than occasionally crouch or crawl . . . ." (Tr. at 69.) The VE responded that Claimant would be able to perform sedentary work including: (1) Order Clerk, (2) Call Out Operator, and (3) Bonder Electronics. (*Id.*) The ALJ's second hypothetical contained additional limits proposed by Dr. Trew. The ALJ added in the second hypothetical that the hypothetical claimant: could stand or walk less than two hours, and sit somewhere between four and six, and could lift and carry less than 10 pounds frequently and occasionally. (Tr. at 70.) With these additional limitations, the VE concluded all work would be precluded. Ultimately, the ALJ rejected Dr. Trew's conclusions and accepted the VE's response to the first hypothetical. Accordingly, he found Claimant was not disabled because she was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. at 28-29.)

## Standard of Review

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g)(2007); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is less than a preponderance of the evidence, but "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The burden

of proof to establish a disability rests upon the claimant. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

*Discussion*

Claimant appeals the decision of the ALJ and claims the ALJ erred by: (1) Discounting the credibility of Claimant's alleged symptoms and testimony; (2) rejecting Dr. Trew's testimony and weighing Dr. Berner and Dr. Alley's diagnoses too heavily; and (3) basing his decision on the vocational expert's incomplete hypothetical. The court agrees with Claimant and finds that the ALJ committed reversible error in this case.

I. Claimant's Credibility

The ALJ's determination that Claimant lacked credibility was crucial to his assessment of Claimant's impairments and her RFC. Because the ALJ found incredible, he discounted her testimony regarding the severity of her symptoms. Claimant argues that all of the ALJ's reasons for discrediting her testimony are flawed. The ALJ rejected Claimant's testimony and statements for five reasons, described below.

The ALJ must perform a two-step process to evaluate the credibility of subjective testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Step one requires Claimant to produce objective medical evidence of an impairment "that could reasonably be expected to produce some kind of symptom." *Id.* If Claimant meets her burden on step one, the ALJ moves on to step two, where the ALJ must accept Claimant's testimony regarding the severity of her symptoms unless there is affirmative evidence of malingering or the ALJ determines there are specific clear and convincing reasons for rejecting the claimant's credibility. *Id.* The ALJ must make "findings sufficiently

specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Id.*

At step one, Claimant met her burden by submitting a magnetic resonance imaging ("MRI") scan and a computerized tomography ("CT") scan that showed a mild inferior ectopia of right cerebellar tonsil that could represent a minimal Chiari I malformation. (Tr. at 293, 379.) The Commissioner does not contend that evidence exists on the record demonstrating Claimant malingered, so the ALJ must provide clear and convincing reasons for rejecting Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms. *Tommasetti*, 533 F.3d at 1039.

The ALJ rejected Claimant's credibility because she: (1) had a poor work history and gave inconsistent reasons for not working; (2) engaged in daily living activities inconsistent with the severe symptoms she alleges; (3) pursued exceedingly conservative course of treatment; (4) exaggerated or fabricated her medical symptoms; and (5) requested for a referral to a physician late in the disability application process.

An extremely poor work history and little propensity to work in a lifetime is a specific and convincing reason to discredit a claimant. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Claimant's work history is indeed sparse. Claimant worked only occasionally from 2001 to 2009, earning in excess of $5,000 only once. The record also shows she left the workforce for reasons other than her disability. Claimant stopped working on October 25, 2009, because she was laid off. (Tr. at 238.) After attempting to return to work on May 5, 2010, Claimant quit twenty-two days after starting because of her symptoms. (*Id.*) Yet, Claimant's amended alleged onset date is September 11, 2010, four months after Claimant stopped working. If Claimant terminated her employment

prior to her onset date, it could not have been because she was disabled.  Thus, the ALJ adequately justified rejecting Claimant's credibility.

Second, the ALJ rejected Claimant's credibility because her activities of daily living are inconsistent with the alleged severity of her symptoms.  When a Claimant is able to spend a substantial part of her day engaged in physical functions transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegation.  *Morgan v. Comm'r,* 169 F.3d 95 600 (9th Cir. 1999).  But the ALJ must make "specific findings relating to the daily activities" and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.  *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007).  A claimant's inconsistent statements can be considered as a factor in discrediting a claimant's testimony.  *Smolen v. Chater,* 80 F.3d 1273, 1283–84 (9th Cir. 1996).

Here, the ALJ discounted Claimant's credibility because of the inconsistences between her daily living activities and alleged severe symptoms from June 2010 through October 2010.  (Tr. at 25.)  In June, Claimant was able to care for her two children by cleaning the house for short periods of time, cooking, doing laundry, helping her eldest child with his homework, watching television for several hours at a time, and playing board games.  (Tr. at 255-62.)  Although Claimant was capable of engaging in those daily activities, she alleges her back was in constant pain, her legs would give out, and she could not lift her two-year-old child.  (Tr. at 255.)  Only four months later, Claimant claims she could no longer perform basic activities of self care due to her extreme pain.  (Tr. at 265-69.)  During that time, Claimant was unable to stay home alone, brush her hair, tie her shoes, cook, or watch her children without supervision from another adult.  (*Id.*)  At that time, Claimant became pregnant with her third child.  (Tr. at 375.)  However, in social security reports submitted in June

2010 and January 2011, Claimant does not indicate any worsening of her symptoms other than occasional right leg numbness and more pain in her back and neck. (Tr. at 255, 265.) Claimant's severe and drastic change in daily activities from June to October is not consistent with the physical limitations she alleges in reports submitted to the Commissioner. Thus, the ALJ did not err in rejecting Claimant's testimony.

Third, the ALJ rejected Claimant's credibility due to the Claimant's exceedingly conservative course of treatment. An ALJ may properly reject a claimant's testimony on account of the claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Even though Claimant alleged severe symptoms, her treatment consisted only of albuterol and ibuprofen. (Tr. at 241.) If given other types of medication, Claimant testified she would have an allergic reaction which was the reason for her conservative treatment. (Tr. at 25.) However, when Claimant took pain medication like ibuprofen, she received relief. (*Id.*) In May 2010, Claimant declined a prescription for Toradol with no explanation of being potentially being allergic, and instead requested a note for her work. (Tr. at 300.) Given the severe symptoms she alleges and the lack of evidence Claimant was allergic to certain medications, her testimony inadequately explains her failure to seek stronger treatment. Therefore, the ALJ did not err in discounting Claimant's credibility for failure to seek more aggressive treatment.

Fourth, the ALJ found highly relevant Claimant's potential exaggeration and fabrication to her doctors about her symptoms and fifth, her request for a referral to a physician. The court is not convinced these are legitimate clear and convincing reasons to reject Claimant's testimony. As the court will discuss in more detail, the ALJ insufficiently supports his contention Claimant

FINDINGS & RECOMMENDATION        13                    [MLF]

exaggerated her symptoms during medical testing. Moreover, the fact Claimant primarily sought treatment from a nurse practitioner, and sought a referal to a specialist only after making the decision to seek Social Security benefits should and does not work a determent to her credibility. It is not uncommon for individuals to seek treatment from a nurse practitioner, who is often an economical and efficient means of obtaining certain medical treatment. Moreover, given that in Social Security cases, the court does not credit the opinions of nurse practitioners as medical evidence, it makes sense Claimant would seek a specialist to address her problems prior to applying for Benefits. Thus, the ALJ's final two reasons for rejecting Claimant's credibility are legally insufficient.

Regardless, the court should conclude that the ALJ did not err by rejecting Claimant's credibility because he provided three clear and convincing reasons for doing so. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (finding harmless an ALJ's rejection of a witness's testimony on erroneous grounds because the ALJ provided other legitimate reasons for rejecting the witness's testimony). Thus, the ALJ did not commit reversible error by rejecting Claimant's testimony.

## II. Conflicting Medical Evidence

The Claimant argues that the ALJ erred by improperly rejecting the opinion and ultimate conclusion of the Plaintiff's examining physician, Dr. Trew, and improperly relying upon the opinions of non-examining state agency doctors, Dr. Berner and Dr. Alley, without substantial evidence in the record. The Commissioner claims the ALJ properly assigned credibility to Dr. Trew and correctly weighed Dr. Berner's and Dr. Alley's opinions.

The ALJ must "thoroughly justify" the decision to reject the opinion of a physician.

Cases in this circuit distinguish among the opinions of three types of physicians: (1)

> those who treat the claimant (treating physicians); (2) those who examine but do not
> treat the claimant (examining physicians); and (3) those who neither examine nor
> treat the claimant (non-examining physicians). As a general rule, more weight should
> be given to the opinion of a treating source than to the opinion of doctors who do not
> treat the claimant.

*Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). Moreover, the opinion of an examining physician

is entitled to more weight than a non-examining physician. *Id.* at 830. Where an examining

physician's opinion is uncontroverted, the ALJ must provide "clear and convincing" reasons to reject

the examining physician's opinion. *Id.* However, where the examining physician's opinion conflicts

with another medical opinion on the record, the ALJ need only provide "specific and legitimate"

reasons for rejecting the examining physician's opinion. *Id.* Under these circumstances, it is "solely

the province of the ALJ to resolve the conflict" and to decide which medical opinions to credit.

*Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 751

(9th Cir.1989). The ALJ may include Claimant's credibility and questionable efforts as an

appropriate reason to discount an examining physician's opinion, but only if substantial evidence

supports the ALJ's determination. *See* 20 C.F.R. §§ 404.1527(c)(4), 419.827(c)(4); *see also*

*Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ discredited Claimant's testimony,

citing her lack of cooperation at the hearing, her presentation at the hearing, her tendency to

exaggerate, her inconsistent statements, and her lack of cooperation during consultative

examinations.).

### A. Dr. Trew's Opinion

Claimant challenges the ALJ's decision to reject the opinion and ultimate conclusion of Dr.

Trew by not stating specific and legitimate reasons supported by substantial evidence. The ALJ

clearly articulated only one reason for rejecting Dr. Trew's opinion Claimant was incapable of full-

time employment, that she exhibited less-than-optimal effort on strength and gait tests administered by Dr. Trew. Claimant contends the ALJ misread the record and inaccurately challenged Dr. Trew's findings as inconsistent with the examining physician neurologist, Dr. Melson. (Tr. at 351-57, 339-41.) Claimant further contends the opinions of non-examining doctors "cannot by themselves constitute substantial evidence that justifies the rejection" of an examining opinion. (PL.'s Br. at 14.) The Commissioner argues that because the record provides conflicting medical evidence between Dr. Melson and Dr. Trew, the ALJ reasonably inferred that Claimant's effort during Dr. Trew's examination was questionable. Therefore, according to the Commissioner, the ALJ provided sufficient justifications for discounting Dr. Trew's opinion. (Def.'s Br. at 7.)

Here, Dr. Trew's opinion Claimant was incapable of working full-time conflicts with the opinions of Dr. Berner and Dr. Alley. Thus, the ALJ was required to provide "specific and legitimate" reasons for rejecting Dr. Trew's conclusions. Moreover, an ALJ may lawfully reject the medical opinion of a physician where the doctor relies too heavily on the subjective reports of an incredible claimant, or where substantial evidence supports the conclusion that the Claimant exhibited sub-optimal effort on a physician's medical tests. 20 C.F.R. §§ 404.1527(c)(4), 419.827(c)(4); *Tonapetyan,* 242 F.3d at 1149.

However, the ALJ did not conclude Dr. Trew relied too heavily on Claimant's subjective complaints. Instead, the ALJ concluded that, because the results of Dr. Trew's medical tests conflicted with the results of identical tests administered five months later by Dr. Melson, Claimant was exaggerating her symptoms during her appointment with Dr. Trew. During a September 11, 2010 appointment, Dr. Trew found Claimant's gait abnormal, she could not tandem walk or toe/heel walk due to pain, and the strength of her lower and upper extremities were 3/5 and 4/5 respectively.

FINDINGS & RECOMMENDATION        16                                    [MLF]

More than five months later, on February 29, 2011, Dr. Melson observed Claimant's gait was normal, her tandem walk was poor but she could heel/toe walk and the strength of her lower and upper extremities were normal. Comparing the partially conflicting results from the identical tests made the ALJ "question the amount of effort the claimant expended at the consultative evaluation." (Tr. at 26.) On that basis, he gave Dr. Trew's opinion less credibility than Dr. Berner and Dr. Alley.

The record shows the results of Claimant's tests were, symptoms may vary in their intensity, persistence and functional effects, or may worsen or improve with time. SSR 96-7P, *available at* 1996 WL 374186, at *1 (July 2, 1996). Although the ALJ does not clearly say so, he rejected Dr. Trew's opinion because the ALJ concluded the Claimant was malingering and giving less-than-optimal effort on medical tests. However, Dr. Trew found "no evidence of poor effort or inconsistencies," and Dr. Melson did not indicate Claimant showed signs of exaggeration or malingering. Instead of relying on affirmative evidence of malingering or exaggeration, the ALJ substituted his own medical opinion for that of Dr. Trew. In fact, the ALJ provided no evidence that Claimant exaggerated during Dr. Trew's examination except for the fact it was partially inconsistent with the results of Dr. Melson's subsequent exam.

It is not enough that the ALJ found Claimant incredible and imputed that unfavorable credibility determination to Dr. Trew. The issue of whether a claimant is malingering and whether a doctor relies too heavily on a claimant's incredible subjective reports are separate issues. Conflating them distorts the legal analysis and undercuts the relative competencies of certain institutional actors. The ALJ, as a legal professional experienced in analyzing evidence and resolving evidentiary conflicts, is competent to weigh the credibility of a claimant's testimony. Dr. Trew, on the other hand, is experienced in administering medical tests and personally assessing the

FINDINGS & RECOMMENDATION          17                                    [MLF]

reliability of the results based on a patient's behavior. In usurping Dr. Trew's authority to analyze the effort exerted by patients and concluding without evidence Claimant was malingering, the ALJ undermined the statutory and regulatory framework designed to yield just results in Social Security disability cases. Moreover, to permit an ALJ to, without evidence, reject the reliability of any medical test whose results are at least partially under the claimant's control obviates the requirement an ALJ give specific and legitimate reasons for rejecting an examining physician's medical opinion. Under those circumstances, the ALJ could arbitrarily reject or bolster the credibility of any physician on the record. Therefore, the ALJ erred as a matter of law in failing to give specific and legitimate reasons supported by substantial evidence to reject Dr. Trew's testimony.

### B. Dr. Berner and Dr. Alley's Opinion

After improperly rejecting Dr. Trew's testimony, it follows the ALJ improperly weighed the opinions of Dr. Berner and Dr. Alley, the non-examining state agency physicians. (Tr. at 26.) The opinions of non-examining physicians may serve as substantial evidence for an ALJ's conclusions when the opinions are consistent with independent clinical findings or other evidence in the record. *Morgan v. Comm'r,* 169 F.3d 595, 600 (9th Cir. 1999). However, absent specific and legitimate reasons for rejecting an examining physician's credibility, the law requires an ALJ to give more weight to the opinion of an examining physician than the opinion of a non-exmining physician. *Lester,* 81 F.3d at 830. Here, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Trew's opinion and erred by elevating the credibility of Dr. Berner and Dr. Alley over that of Dr. Trew.

### C. Vocational Expert's Hypothetical

Lastly, the ALJ erred by improperly relying on the vocational expert's testimony. The ALJ

posed two hypothetical questions to the vocational expert. In response to the first hypothetical, which was premised on the RFC articulated by Dr. Berner and Dr. Alley, the VE concluded the hypothetical claimant could perform several jobs that exist in significant numbers in the national economy. However, in response to the second hypothetical, based on the conclusions of Dr. Trew, the VE determined such a hypothetical claimant would be incapable of full-time work in the national economy. The ALJ subsequently ignored the VE's analysis of the second hypothetical question and found Claimant capable of SGA. However, because the ALJ improperly rejected Dr. Trew's medical opinion, the first hypothetical did not contain all of Claimant's functional limitations. If a hypothetical question posed to a VE does not contain all of the claimant's functional limitations, the expert's testimony has no evidentiary value, and cannot be relied upon to support a conclusion the Clamant is capable of work in the national economy. Thus, the vocational expert's testimony in this case holds no evidentiary value. Since the ALJ improperly relied on vocational expert's testimony, the ALJ did not meet the burden of proving Claimant could perform work available in large numbers in the national economy.

### III. Directions on Remand

The ALJ committed prejudicial error by: (1) Failing to give specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Trew's testimony; (2) improperly weighing the opinions of Dr. True, Dr. Berner, and Dr. Alley; and (3) improperly relying on the VE's testimony. When the ALJ commits reversible error, the court has "discretion to remand a case either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Where the record is fully developed and "further administrative proceedings would serve no useful purpose," the court will generally direct an award for benefits. *Id.* The Ninth Circuit

has held that additional administrative proceedings are futile where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.*

Here, the ALJ gave legally insufficient reasons for rejecting the opinion of Dr. Trew. Based on the vocational expert's testimony, when Dr. Trew's opinion is fully credited, the court is required to find that Claimant's combination physical limitations render her disabled. However, courts may "remand for further proceedings when, even though all conditions . . . are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison v. Colvin,* 759 F.3d 995, 1020 (9th Cir. 2014). In this case, the record raises doubts as to whether Claimant is disabled, and the court should remand this case to the ALJ so he may reevaluate the evidence in light of this court's analysis. Therefore, this case should be reversed and remanded for additional administrative proceedings.

## Conclusion

For the reasons discussed herein, and pursuant to Review Final Decision of the Commissioner denying Claimant's application (Dkt. No. 1), the court should REVERSE the decision of the ALJ and REMAND this case for additional administrative proceedings consistent with the court's opinion.

## Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due June 23, 2015. If no objections are filed, then the Findings and Recommendation will go

under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 9th day of June, 2015

JOHN V. ACOSTA
United States Magistrate Judge